SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

BRIAN PEREZ,

|  | Plaintiff, |

-against-

METROPOLITAN TRANSPORTATION AUTHORITY,
METROPOLITAN TRANSPORTATION AUTHORITY
POLICE DEPARTMENT, THE CITY OF NEW YORK,
METROPOLITAN TRANSPORTATION AUTHORITY
POLICE OFFICER CONNOR FAUGHNAN, SHIELD
NO. 2342, METROPOLITAN TRANSPORTATION
AUTHORITY POLICE OFFICER PATRICK COONEY,
SHIELD NO. 2177, METROPOLITAN
TRANSPORTATION AUTHORITY POLICE OFFICERS
WHO WERE INVOLVED IN THE ARREST OF THE
CLAIMANT, NAMED HEREIN AS JOHN/JANE DOES
1-10,

|  | Defendants. |

# SUMMONS

Plaintiff designates
New York County as
the place of trial.

The basis of venue is
the county in which
the cause of action
arose.

To the above named Defendants:

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer on Plaintiff's Attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
      December 13, 2019

1

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 2 of 36

SULLIVAN & BRILL, LLP
Attorneys for Plaintiff

By: James Healy, Esq.

115 Broadway, 17th Floor
New York, New York 10006
Phone: (212) 566-1000
Fax: (212) 566-1068
Email for Service of Papers:
emailservice@sullivanbrill.com

2

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 3 of 36

Defendants' Addresses:

THE NEW YORK CITY LAW DEPARTMENT –
OFFICE OF THE CORPORATION COUNSEL
Attorneys for THE CITY OF NEW YORK
100 Church Street
New York, New York 10007

METROPOLITAN TRANSPORTATION AUTHORITY
c/o MTA GENERAL COUNSEL
2 Broadway, 4th Floor
New York, NY 10004

METROPOLITAN TRANSPORTATION AUTHORITY POLICE DEPARTMENT
/o MTA GENERAL COUNSEL
2 Broadway, 4th Floor
New York, NY 10004

METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER
CONNOR FAUGHNAN, SHIELD NO. 2342,
MTA Police Department, District 4
1 Pennsylvania Plaza
New York, NY 10001

METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER
PATRICK COONEY, SHIELD NO. 2177,
MTA Police Department, District 4
1 Pennsylvania Plaza
New York, NY 10001

METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICERS WHO
WERE INVOLVED IN THE ARREST OF THE CLAIMANT, NAMED HEREIN AS
JOHN/JANE DOES 1-10
MTA Police Department, District 4
1 Pennsylvania Plaza
New York, NY 10001

3

Case 1:20-cv-00374-LAK-SDA Document 12-4 Filed 02/10/20 Page 4 of 36

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

BRIAN PEREZ,

                                        Plaintiff,          **VERIFIED
                                                            COMPLAINT**

                    -against-

METROPOLITAN TRANSPORTATION AUTHORITY,
METROPOLITAN TRANSPORTATION AUTHORITY
POLICE DEPARTMENT, THE CITY OF NEW YORK,
METROPOLITAN TRANSPORTATION AUTHORITY
POLICE OFFICER CONNOR FAUGHNAN, SHIELD
NO. 2342, METROPOLITAN TRANSPORTATION
AUTHORITY POLICE OFFICER PATRICK COONEY,
SHIELD NO. 2177, METROPOLITAN
TRANSPORTATION AUTHORITY POLICE OFFICERS
WHO WERE INVOLVED IN THE ARREST AND
EXCESSIVE FORCE COMMITTED AGAINST
PLAINTIFF NAMED HEREIN AS JOHN/JANE DOES 1-
10

                                        Defendants.

Plaintiff, BRIAN PEREZ, by his attorneys, SULLIVAN & BRILL, LLP,

complaining of Defendants, alleges:

        1.      Plaintiff BRIAN PEREZ was and is a resident of the County of Suffolk,

State of New York.

        2.      At all times hereinafter mentioned, Defendant, THE CITY OF NEW

YORK, was and still is a municipal corporation organized and existing under the

laws of the State of New York.

        3.      On or about January 23, 2019, Plaintiff served a Notice of Claim in

writing upon THE CITY OF NEW YORK.

3

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 5 of 36

4.    THE CITY OF NEW YORK acknowledged receipt of the Notice of Claim by letter dated January 25, 2019.

5.    On or about January 24, 2019, Plaintiff served a Notice of Claim in writing upon METROPOLITAN TRANSPORTATION AUTHORITY

6.    At least thirty (30) days have elapsed since the service of the Notice of Claim and Amended Notice of Claim prior to the commencement of this action and adjustment of payment thereof has been neglected or refused, and this action has been commenced within one (1) year and ninety (90) days after the happening of the event upon which the claims are based.

7.    Plaintiff has complied with the request of the municipal defendants for an oral examination pursuant to Section 50-h of the General Municipal law by testifying at a 50-h hearing for THE CITY OF NEW YORK on July 16, 2019.

8.    Plaintiff has complied with the request of the municipal defendants for an oral examination pursuant to Section 50-h of the General Municipal law by testifying at a 50-h hearing for THE CITY OF NEW YORK on July 16, 2019.

9.    On April 12, 2014, Plaintiff resided at 33 W. 69th St., Third Fl., New York, NY 10023.

10.    Plaintiff currently resides at 359 W. 54th St., Apt. 6FN, New York, NY 10019.

11.    At all times mentioned hereinafter, THE CITY OF NEW YORK, its agents, servants, and employees (hereinafter "City") operated, maintained and controlled the New York City Police Department (hereinafter "NYPD"), including all the police officers and employees thereof.

4

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 6 of 36

12.    DEFENDANTS METROPOLITAN TRANSPORTATION AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY POLICE DEPARTMENT, THE CITY OF NEW YORK, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER CONNOR FAUGHNAN, SHIELD NO. 2342, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER PATRICK COONEY, SHIELD NO. 2177, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICERS WHO WERE INVOLVED IN THE ARREST AND EXCESSIVE FORCE COMMITTED AGAINST PLAINTIFF NAMED HEREIN AS JOHN/JANE DOES 1-10  (hereinafter "the City and Defendant-officers") were employed by the City on April 12, 2014 and at all times herein were acting in such capacity as the agents, servants, and/or employees of the City within the scope of their employment and under the direction of the City and the NYPD.

13.    At all times hereinafter mentioned and specifically on or about October 27, 2018, at approximately 4:50 AM (hereinafter "time of incident") inside the location of 1 Pennsylvania Plaza, New York, New York County, State of New York (hereinafter "location of incident"), Defendant-officers individually and collectively were acting within the scope of their employment and under the direction of the City and the NYPD as their agents, servants, and/or employees. Consequently, the City is liable under the doctrine of *respondeat superior* for all officers' tortious actions.

14.    On or about the date of incident and at all relevant times hereunder, Defendant-officers acted as police officers and were required to follow the rules and regulations as contained in the NYPD Patrol Guidelines.

5

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 7 of 36

15.     On or about the date of incident, Defendant-officers were present at the location of incident.

16.     On or about the date of incident at the location of the incident, Plaintiff was wrongfully touched, grabbed, punched, kicked, searched, handcuffed, seized, and otherwise subjected to excessive force by Defendant-officers without any lawful basis.

17.     On the date of incident and at the location of incident, Plaintiff was wrongfully touched, grabbed, searched, handcuffed, seized, and arrested by THE CITY OF NEW YORK police officers without an arrest warrant or search warrant.

18.     Plaintiff was brought to a local police precinct where he was criminally processed and fingerprinted and held until approximately 9:00 PM,

19.     Plaintiff was arraigned before a criminal court judge and charged with Resisting Arrest, pursuant to Penal Law § 205.30, Attempted Assault in the Third Degree, pursuant to Penal Law § 110/120.00(1), and Harassment in the Second Degree, pursuant to Penal Law § 240.26(1). He was released on his own recognizance.

20.     Plaintiff had committed no crime but was subjected to the imprisonment and excessive force of the City and Defendant-officers.

**AS AND FOR A FIRST CAUSE OF ACTION FOR FALSE ARREST AS TO DEFENDANTS METROPOLITAN TRANSPORTATION AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY POLICE DEPARTMENT, THE CITY OF NEW YORK, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER CONNOR FAUGHNAN, SHIELD NO. 2342, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER PATRICK COONEY, SHIELD NO. 2177, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICERS WHO WERE**

6

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 8 of 36

## INVOLVED IN THE ARREST AND EXCESSIVE FORCE COMMITTED AGAINST PLAINTIFF NAMED HEREIN AS JOHN/JANE DOES 1-10

21.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked "1" through "20" with the same force and effect as if more fully and at length set forth herein.

22.     That beginning on or about the date of incident at or near the location of incident, the City and Defendant-officers and their agents, servants, and/or employees arrested Plaintiff.

23.      That said arrest was caused by the City and Defendant-officers, their agents, servants, and/or employees, without any warrant or other legal process and without authority of the law and without any reasonable grounds, or cause to believe that Plaintiff was guilty of such crimes, or that the defendants had just cause to arrest Plaintiff.

24.     Plaintiff was wholly innocent of any crime and did not contribute in any way or manner to his arrest by the City and Defendant-officers, and was forced to submit to the aforesaid imprisonment entirely against his will.

25.     That the City and Defendant-officers, their agents, servants, and/or employees, as set forth above, intended to arrest and confine Plaintiff; Plaintiff was conscious of the arrest and confinement; Plaintiff did not consent to the arrest or confinement; and the arrest and subsequent confinement were not otherwise privileged.

7

26.    That by reason of the aforesaid false arrest and detention of Plaintiff, he was imprisoned and was subjected to great indignity, humiliation, pain and great distress of mind and body.

27.    That by reason of the aforesaid, Plaintiff has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

**AS AND FOR A SECOND CAUSE OF ACTION FOR FALSE ARREST AS TO DEFENDANTS METROPOLITAN TRANSPORTATION AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY POLICE DEPARTMENT, THE CITY OF NEW YORK, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER CONNOR FAUGHNAN, SHIELD NO. 2342, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER PATRICK COONEY, SHIELD NO. 2177, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICERS WHO WERE INVOLVED IN THE ARREST AND EXCESSIVE FORCE COMMITTED AGAINST PLAINTIFF NAMED HEREIN AS JOHN/JANE DOES 1-10**

28.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked "1" through "27" with the same force and effect as if more fully and at length set forth herein.

29.    That beginning on or about the date of incident at or near the location of incident, the City and Defendant-officers, and their agents, servants, and/or employees intentionally handcuffed and imprisoned Plaintiff, without any just cause, and held him against his will until he was arraigned and released on October 27, 2018.

30.    That Plaintiff was falsely imprisoned and remained imprisoned while locked in a cell at the police precinct, transported in police vehicles, and held at New

8

Case 1:20-cv-00374-LAK-SDA    Document 12-4    Filed 02/10/20    Page 10 of 36

York Central Booking, by the City and Defendant-officers, their agents, servants and/or employees.

31.    That said imprisonment was caused by the City and Defendant-officers, and their agents, servants, and/or employees without any warrant or other legal process and without authority of the law and without any reasonable grounds, or cause to believe that Plaintiff was guilty of any crimes, or that the City and Defendant-officers had just cause to imprison Plaintiff.

32.    Plaintiff was wholly innocent of any crime and did not contribute in any way or manner to his imprisonment by the City and Defendant-officers, and their agents, servants, and/or employees, and was forced to submit to the aforesaid imprisonment entirely against his will.

33.    That the City and Defendant-officers and their agents, servants, and/or employees intended to confine Plaintiff; Plaintiff was conscious of the confinement; Plaintiff did not consent to the confinement; and the confinement was not otherwise privileged.

34.    That by reason of the aforesaid false imprisonment and detention of Plaintiff, his freedom was restricted and he was subjected to great indignity, humiliation, pain and great distress of mind and body.

35.    That by reason of the aforesaid, Plaintiff has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

**AS AND FOR A THIRD CAUSE OF ACTION FOR MALICIOUS PROSECUTION AS TO DEFENDANTS METROPOLITAN TRANSPORTATION AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY POLICE DEPARTMENT, THE CITY OF NEW YORK, METROPOLITAN TRANSPORTATION**

9

INDEX NO. 162051/2019
RECEIVED NYSCEF: 12/13/2019

**AUTHORITY POLICE OFFICER CONNOR FAUGHNAN, SHIELD
NO. 2342, METROPOLITAN TRANSPORTATION AUTHORITY
POLICE OFFICER PATRICK COONEY, SHIELD NO. 2177,
METROPOLITAN TRANSPORTATION AUTHORITY POLICE
OFFICERS WHO WERE INVOLVED IN THE ARREST AND
EXCESSIVE FORCE COMMITTED AGAINST PLAINTIFF NAMED
HEREIN AS JOHN/JANE DOES 1-10**

36.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked "1" through "35" with the same force and effect as if more fully and at length set forth herein.

37.     On or about the date of incident and from that time until all charges are dismissed against Plaintiff, which will be a favorable termination for the accused, defendants deliberately and maliciously prosecute(d) Plaintiff without any probable cause, by filing or causing a felony complaint to be filed in the Criminal Court of the City of New York, New York County, for the purpose of falsely accusing Plaintiff of violations of the criminal laws of the State of New York.

38.     The City and Defendant-officers, jointly and severally, their agents, servants, and/or employees failed to take reasonable steps to stop the prosecution of Plaintiff and instead maliciously and deliberately provided false and/or incomplete information to the District Attorney's office and/or the criminal court to induce prosecution of Plaintiff and due to the absence of probable cause malice can be inferred.

39.     The commencement and continuation of these criminal proceedings was malicious and began in malice and without probable cause, so that the proceedings could succeed by the City and Defendant-officers, and their agents, servants, and/or employees.

10

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 12 of 36

40.     As a result of the malicious prosecution, Plaintiff was and is deprived of his liberty and suffered the humiliation, mental anguish, indignity and frustration of an unjust criminal prosecution.

41.     That by reason of the aforesaid, Plaintiff has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR ASSAULT, BATTERY, AND EXCESSIVE FORCE AS AGAINST DEFENDANTS METROPOLITAN TRANSPORTATION AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY POLICE DEPARTMENT, THE CITY OF NEW YORK, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER CONNOR FAUGHNAN, SHIELD NO. 2342, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER PATRICK COONEY, SHIELD NO. 2177, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICERS WHO WERE INVOLVED IN THE ARREST AND EXCESSIVE FORCE COMMITTED AGAINST PLAINTIFF NAMED HEREIN AS JOHN/JANE DOES 1-10**

42.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked "1" through "41" with the same force and effect as if more fully and at length set forth herein.

43.     That on that date of incident and at the location of incident, Plaintiff was assaulted, battered, and subjected to excessive force.

44.     The City and Defendant-officers and their agents, servants, and/or employees, while acting within the scope of their employment, touched, grabbed, punched, kicked, searched, handcuffed, seized, and otherwise subjected Plaintiff to excessive force.

45.     The City and Defendant-officers and their agents, servants, and/or employees had no reason or just cause to assault, batter, and subject Plaintiff to

11

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 13 of 36

excessive force. Said conduct was without Plaintiff's consent or permission, and was far in excess of any force necessary to effectuate Plaintiff's arrest and/or control his person. Said force was excessive given the nature and/or lack of any complaint concerning Plaintiff and any potential alleged threat he may have posed. Further, said conduct was unprivileged because there was no lawful basis to arrest or control Plaintiff and he was never in violation of any Penal or criminal law.

46.     That the City and Defendant-officers and their agents, servants, and/or employees acting as agents on behalf of the City and within the scope of their employment, intentionally, willfully, and/or maliciously assaulted, battered, and subjected Plaintiff to excessive force, in that they had the ability to cause imminent harmful or offensive bodily contact and intentionally did acts which threatened to and did cause such contact to Plaintiff. That said acts caused apprehension of such offensive contact and actual offensive conduct to Plaintiff, when officers in a hostile and/or offensive manner touched Plaintiff without his consent and with the intent to commit offensive bodily contact to Plaintiff.

47.     That the City is liable for the actions of its employees, including the above-named agents, servants, and/or employees for conduct committed within the scope of their employment.

48.     That by reason of the aforesaid intentional assault, battery, and excessive force, Plaintiff suffered and still continues to suffer from physical, emotional, and psychological injuries to his body and mind, and suffered conscious pain and suffering.

12

49.     That by reason of the aforesaid, Plaintiff has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT THE CITY OF NEW YORK FOR NEGLIGENT TRAINING, HIRING, RETENTION, SUPERVISING, AND PROMOTING

50.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked "1" through "49" with the same force and effect as if more fully and at length set forth herein.

51.     That the City was negligent, careless and reckless in hiring, retaining, supervising, promoting, training, and retraining its employees and Defendant-officers, in that said officers, as employees of the City, were not qualified to be hired, retained, or promoted as police officers and lacked the experience, skill, training, and ability to be employed by the City as police officers.

52.     That the City failed to exercise due care and caution in its hiring, retaining, promoting, and training practices; in that the City failed to adequately test, analyze test results, and/or investigate said officers' backgrounds; the City failed to adequately screen said officers; failed to adequately monitor officers; failed to properly discipline officers who violate the NYPD Patrol Guidelines; failed to adequately monitor officers' Central Personnel Indexes (hereinafter "CPI"); failed to properly discipline and monitor officers who are investigated by NYPD, the Civilian Complaint Review Board, and the Internal Affairs Bureau; failed to properly train and retrain officers; and in that the City and Defendant-officers were otherwise careless, negligent, and reckless.

13

53.     That the aforesaid occurrence – a false arrest, assault, battery, and excessive force, and the resulting injuries to mind and body – was caused wholly and solely by reason of the negligence or deliberate indifference of the City and Defendant-officers its agents, servants, and/or employees without any negligence on the part of Plaintiff contributing thereto.

54.     That by reason of the aforesaid, Plaintiff has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST THE CITY OF NEW YORK FOR VIOLATION OF PERSONAL CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983 and *MONELL v. DEPT. OF SOCIAL SERVICES OF CITY OF NEW YORK,* 436 U.S. 658 (1978)

55.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked "1" through "54" with the same force and effect as if more fully and at length set forth herein.

56.     That on the date of incident and at the location of incident, the City and Defendant-officers were present as part of their regular and official employment as police officers for the City and were acting under the color of law and within the scope of their employment.

57.     That the City caused, developed, maintained, and/or created a policy and/or procedure and/or custom and/or practice, or decision of a final policymaker, and acted with deliberate indifference to patterns and/or police practices violating constitutional rights of its citizens, which caused the violations of Plaintiff's rights, including the following and as outlined in more detail below: improperly holding, imprisoning, and/or detaining individuals without probable cause and justification;

14

excessive and arbitrary use of force; failing to train and retrain officers in the use of force; failing to follow police guidelines; failing to monitor or discipline police misconduct; failing to gather evidence and investigate when allegations of police misconduct are alleged; condoning silence within the police department regarding misconduct; failing to properly supervise, train, investigate, or discipline officers; falsely swearing out criminal complaints and police paperwork; falsifying evidence and NYPD paperwork; committing perjury; failing to respond to evidence of corruption; and failing to intervene to prevent the above-mentioned practices.

58.     That as to all of the violations alleged in this sixth cause of action, the City knew to a moral certainty that its employees would confront situations like the subject incident involving Plaintiff, in which decisions regarding use of force would need to be made.

59.     That as to all of the violations alleged in this sixth cause of action, the City has a history of its employees mishandling similar situations similar to the subject incident, which present City's employees with choices of the sort that training or supervision would make less difficult.

60.     That as to all of the violations alleged in this sixth cause of action, the wrong choice by City employees will frequently cause the deprivation of citizen's constitutional rights, as in the subject incident.

61.     That said acts constituted an illegal seizure of the plaintiff and deprived him of his rights and liberties as set forth in the Constitutions of the United States and of the State of New York and under 42 U.S.C. § 1983 and 42 U.S.C. § 1986.

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 17 of 36

61.     That said actions violated the Fourth and Fourteenth Amendments to the Constitution of the United States of America, violated plaintiff's right to be secure in his person, and the defendants used excessive and unlawful force.

## I.     The City's Excessive Force Policies, Procedures, Customs, and Practices.

62.     The City's policies, procedures, customs, and practices improperly train officers in the use of force and encourage the use of excessive force.

63.     The City's policies, procedures, customs, and practices are inadequate regarding the escalation of force.

64.     The City has refused to adopt industry standards and best practice policies that are in use in other police departments across the country regarding the use of force.

65.     The City's policies, procedures, customs, and practices fail to train officers about the appropriate techniques in the use of force.

66.     The Defendant-officers were inadequately trained and supervised in the implementation of NYPD policies for the use of force.

67.     The failure of the City and Defendant-officers who responded to the scene to follow the NYPD policies in effect at the time of the incident also led to and/or contributed to Plaintiff's injuries.

68.     The failure of NYPD supervisors to follow the NYPD policies in effect at the time of the incident and their failure to adequately supervise the officers under their commands contributed to Plaintiff's injuries.

16

69.     That as Plaintiff was lawfully and properly at the subject location, the City and Defendant-officers failed to properly use verbal commands to communicate with Plaintiff and instead resorted to excessive force to imprison and control Plaintiff.

70.     The existence of aforesaid unconstitutional customs, policies, patterns, and/or practices may be inferred from repeated occurrences of similar wrongful conduct, as documented below, as well as independent studies into the pattern and practice of the NYPD.

## A. The NYPD's history of excessive force as documented by the Office of the Inspector General

71.     In 2013, the City Council of New York passed Local Law 70 amending the New York City Charter to establish the Office of the Inspector General ("OIG").

72.     The OIG is independent of the NYPD and is charged with investigating, reviewing, studying, auditing and making recommendations relating to the operations, policies, programs and practices of the NYPD.

73.     In April of 2015, because the number of lawsuits against the NYPD had been steadily increasing due, in part, to allegations of excessive force, the OIG recommended that NYPD should compile and publicly releasing data on police misconduct regarding the NYPD's Early Intervention System and the litigation data from the NYC Law Department regarding police abuse claims made against the NYPD.

74.     The NYPD disagreed with the OIG's premise and refused to implement the public disclosure. In 2017, however, the New York City Council passed Local

17

Law 166, requiring that the New York City Law Department post information on

civil actions alleging misconduct commenced against the police department and

individual officers on its website.

75.    On  October 1, 2015, the Officer of the Inspector General for the NYPD

issued a report, titled *Police Use of Force in New York City: Findings and*

*Recommendations on NYPS's Policies and Practices.* The Report determined, for

period reviewed, 2010-2014,  among other things:

a) That the NYPD has had  an ongoing issue with its officers employing

excessive force;

b) That the NYPD Patrol Guide did not properly instruct officers to de-

escalate encounters with the public;

c) The training provided to officers did not adequately focus on de-

escalation;

d) The NYPD use of force policy was vague and imprecise and did not

provide individual officers appropriate guidance on what constituted

force.

e) In the reviewed period of time, 2010-2014, the NYPD did not impose

discipline on those officers that used excessive force.

76.    The OIG made numerous recommendations to the NYPD, including the

following:

a)  updating the patrol guide to clarify what is meant by force and excess

force and requiring officers to de-escalate encounters where

appropriate;

18

b) Improve the reporting and tracking of excessive force by creating a uniform use of force reporting form, requiring officers to document all force incidents in detailed and descriptive language, creating a database to track data compiled from the use of force forms, and make the data public;

c) Improve training and evaluation of officers regarding use of force and de-escalation procedures;

d) Improving the consistency, transparency and suitability of discipline in use of force complaints and investigations; and

e) Publish on an annual basis the data compiled on use of force incidents and results of any investigation or settlement.

77. In March of 2017, the OIG found that

> While the [NYPD addressed] some of OIG-NYPD's 2015 use-of-force findings and recommendations. . . , NYPD has only partially implemented, rejected, or is still considering other recommendations. For example, although OIG-NYPD recommended that officers who witness force should also complete a use-of-force reporting form, only officers who themselves use force fill out NYPD's new Threat, Resistance or Injury (T.R.I.) Incident Worksheet. In addition, contrary to OIG-NYPD's recommendation that force report forms contain a narrative section, only NYPD's new Supervisor's Assessment Report—the form that investigating supervisors fill out only when a more serious a force incident occurs—includes a narrative section. The T.R.I. Incident Worksheet provides officers with checkboxes indicating what type of force was used and the reason for the force; there is no space for a narrative section.

(Inspector General's Office for the NYPD, Third Annual Report, March 31, 2017).

19

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 21 of 36

78.     In 2018, the OIG, issued press release titled *DOI Investigation Finds Non-Compliance by NYPD with New Use-of-Force Reporting Requirements*. The press release noted that, despite some improvement, there were significant problems with officers under-reporting or failing to report force encounters on the T.R.I. forms, in conflict with information contained on other arrest paperwork, or indicating on arrest paperwork that no force was used, when a T.R.I. form indicated that forces was used. According to the OIG, this discrepancy was a continued indication of in adequate training, a lack of statutory required transparency and a need to revise the forms used by NYPD and the NYPD patrol guide.

79.     On April 30, 2019, the OIG issued a report titled, *Assessment Of Litigation Data Involving NYPD*. That, among other findings, the statutorily required publishing of claims against police offers showed an increase of 72% of lawsuits against police alleging use of force in the period between 2017 to 2018, the majority of the lawsuits filed against police include allegations of false arrest, and that in 2018 the number of use of force and assault and battery claims reached the highest levels since 2015.

## B. Instances of excessive force by NYPD

80.     The following are instances of an unconstitutional policy, procedure, custom, and/or practice of the City and/or the NYPD with respect to excessive force, and the inadequacy of the NYPD's policies, procedures, customs, and practices with respect to training and retraining its officers in how to use force:

a)  According to a 2008 RAND Corporation research study, which was commissioned at the request of then-NYPD Commissioner Raymond W.

20

Kelly, RAND recommended that the "NYPD should ensure and document that trainees have mastered basis and complex use of force tactics and decision-making skills. This should be done by updating computer simulations . . . , ensuring that recruits pass proficiency standards . . . , enhancing record keeping for all training but particularly in-service training with data input over wireless modems to a master training file for each MOS (member of service) and with training and other personnel data being part of a relational data system that would make all personnel information available for administrative and analytic use . . . , exploring alternatives to the current semi-annual firearm-requalification paradigm to provide enhanced firearm instruction that would focus on the officer's proficiency rather than just the score on a static target." The RAND study also recommended that NYPD expand its review of tactics used during firearm and Taser shootings. The RAND study also noted that officers with a CPI of 3.1 or higher per year of service were three times more likely to discharge a weapon than other officers from the population of similar officers. This is important because as the RAND study notes, "NYPD might pay particular attention to shootings involving officers with an annual CPI-point average in excess of 3.1 to make sure that the officers did everything appropriate before discharging their firearms."

b) On May 5, 2013, NYPD officers used excessive force against Deion Fludd in the Rockaway Avenue subway station. The officers claimed

21

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 23 of 36

that Mr. Fludd was hit by a subway train to cover up the force they used against him. Mr. Fludd died as a result of that incident.

c) In 2018, the Civilian Complaint Review Board receive 4,745 complaints, 37% of which contained one or more allegations of improper force.

d) On July 17, 2014, NYPD officers including but not limited to police officer Daniel Pantaleo, used excessive force against Eric Garner, causing Mr. Garner to die within minutes. As a result of this homicide, on December 4, 2014 the NYPD and specifically its commissioner William Bratton, instituted mandatory retraining of all officers in the use of force, de-escalation of interactions with citizens.

e) On July 22, 2014, NYPD Police Commissioner William J. Bratton publicly stated that NYPD was undertaking a review of its training and tactics regarding officers' use of force. Commissioner Bratton ordered all police officers to go through mandatory retraining in the use of force. Commissioner Brattan stated: "As I have reviewed that incident and reviewed the training of the department, it is my belief that we are going to have to do more than just a review of Staten Island."

f) On September 23, 2014, Sandra Amezquita, who was pregnant at the time, was slammed to the ground by NYPD officers, beaten with a baton, and Tasered on her abdomen/stomach area.

g) NYPD Police Officer David Greico has been sued more than 36 times and the City of New York has paid out over $500,000 in settling 17 of these lawsuits

## II.   Instances City's unconstitutional policies, procedures, customs, and practices with respect to racial profiling and/or arresting minorities on the basis of race

81.   The following are instances of an unconstitutional custom, policy, pattern, and/or practice of THE CITY OF NEW YORK and/or the NYPD with respect to unequal treatment by the NYPD on the basis of race:

a) According to the New York Times in an article dated April 1, 2013, in 2010 Police Commissioner Raymond Kelly meets with then-governor David Paterson and states that young black and Hispanic men were the focus of stop and frisks to "instill fear in them, every time they leave their home they could be stopped by the police."

b) In a class action lawsuit <u>David Floyd, et al. v. City of New York, et al.</u>,08 CV-1034 (S.D.N.Y.), in a decision filed August 12, 2013, Justice Scheindlin found the City of New York liable for violating plaintiffs' Fourth and Fourteenth Amendment rights, acting with deliberate indifference toward the NYPD's practice of making unconstitutional stops and adopting a policy of indirect racial profiling. The result of these practices was found to be disproportionate and discriminatory stopping of black and Hispanics in violation of the Equal Protection Clause. Justice Sheindlin concluded that the City of New York's highest officials turned a blind eye to the evidence that officers are conducting stops in a racially discriminatory manner. Justice Sheindlin ordered that NYPD police officers are not permitted to target people for stops based on their race.

23

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 25 of 36

### III. The City's Policies, Procedures, Customs, and Practices in Failing to Respond to Evidence of Corruption and Officers Falsifying Evidence and Committing Perjury

82.     That the City's policies, procedures, customs, and practices fail to discipline officers, fail to respond to evidence of corruption and officers who falsify evidence, falsify NYPD paperwork, or commit perjury.

83.     That the City's policies, procedures, customs, and practices fail to adequately investigate allegations of police misconduct.

84.     That the City's policies, procedures, customs, and practices fail to protect police officers who expose police misconduct.

85.     That the City's policies, procedures, customs, and practices encourage its officers to falsify evidence and commit perjury.

86.     The existence of aforesaid unconstitutional customs, policies, patterns, and/or practices may be inferred from repeated occurrences of similar wrongful conduct, as documented below.

87.     The following are instances of an unconstitutional custom, policy, pattern, and/or practice of the City with respect to falsifying evidence, perjury, negligent hiring, training, retention, and disciplining and/or failing to respond to evidence of corruption:

a)      _Schoolcraft v. City of New York_, 10-CV-6005 (RWS) (S.D.N.Y.): police officer alleges that he was arrested and committed to a psychiatric facility in retaliation for exposing an NYPD police precinct's policies and practices of summons and arrest quotas, falsifying evidence and police records, perjury.

24

b) In New York County Supreme Court, <u>People v. William Eiseman</u> (Ind. No. 2999-2010), NYPD Sergeant William Eiseman pled guilty to perjury and falsifying police records, "admit[ing] to faking a marijuana case against one man and cocaine-related charges against another – and training young [officers] to falsify paperwork to sidestep legal safeguards." Supreme Court Justice Juan Merchan commented that Sgt. Eiseman's admissions "paint a picture of a police officer who has challenged and undermined the integrity of the entire system we have here."

c) In late 2009, a former NYPD officer in the Bronx, Pedro Corniel, was charged with perjury for claiming to have caught a burglar "red-handed," when, in fact, two other officers had made the arrest and handed the arrest off to Mr. Corniel. The suspect was released.

d) <u>Lin v. City of New York</u>, 09-CV-1936 (PGG) (S.D.N.Y.): officers arrest person for photographing an arrest of a bicyclist and sign criminal complaint with facts contradicted by video evidence.

e) <u>Colon v. City of New York</u>, 09-CV-0008 (E.D.N.Y.) Order dated November 25, 2009, denying THE CITY OF NEW YORK'S motion to dismiss on <u>Iqbal</u> grounds in case where police officers were fired and prosecuted for falsifying evidence in a an alleged buy and bust operation, the Honorable District Court Judge Weinstein wrote: "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City

25

Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration – through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department – there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged."

f) In response to the Honourable Judge Weinstein's ruling of November 2009 Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noted a "widespread… custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, NYPD Commissioner Raymond Kelly acknowledged, "When it happens, it's not for personal gain. It's more for convenience."

g) People v. Pogan, 06416-2008 (Sup. Ct., N.Y. Co.): police officer purposefully swore out false complaint and was convicted of falsifying police records.

h) MacNamara v. City of New York, 04-CV-9216 (RJS) (JCF) (S.D.N.Y.): court ordered THE CITY OF NEW YORK to disclose all arrest reports related to the arrests of 1,800 people at the 2004 Republican National Convention as evidence of perjured sworn statements by police officers to cover-up false arrests.

i) Powers v. City of New York, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y.): police officer alleges unlawful retaliation by NYPD officers after testifying about corruption within the NYPD.

26

j) <u>Ariza v. City of New York</u>, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250
   at*14 (E.D.N.Y.): police officer alleges retaliation and harassment in
   response to his allegations about a racially-discriminatory workplace. In
   deciding a motion for summary judgment, the Court held that the police
   officer had established proof of a policy to retaliate against police officers
   who expose police misconduct and a failure to train in the police
   department.

k) The Report of the Commission to Investigate Allegations of Police
   Corruption and the Anti-Corruption Procedures of the Police Department
   ("Mollen Commission Report"), dated July 7, 1994, states: "In the face of
   this problem [of corruption], the [NYPD] allowed its systems for fighting
   corruption virtually to collapse. It has become more concerned about the
   bad publicity that corruption disclosures generate that the devastating
   consequences of corruption itself. As a result, its corruption control
   minimized, ignored and at times concealed corruption rather than root it
   out. Such an institutional reluctance to uncover corruption is not
   surprising. No institution wants its reputations tainted especially a
   Department that needs the public's confidence and partnership to be
   effective. A weak and poorly resourced anti-corruption apparatus
   minimizes the likelihood of such taint, embarrassment and potential harm
   to careers. Thus there is a strong institutional incentive to allow corruption
   efforts to fray and lose priority which is exactly what the Commission
   uncovered. This reluctance manifested itself in every component of the

27

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 29 of 36

Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it."

l) On October 9, 2013, Civilian Complaint Review Board (hereinafter "CCRB") Deputy Executive Director Marcos Soler wrote to the Board Members of the CCRB that from January-August 2013, the NYPD declined to prosecute 29% of all substantiated CCRB cases against its officers.

m) The Mollen Commission concluded that police perjury and falsification of official records is probably the most common form of police corruption facing the criminal justice system. It concluded: "Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their supervisors. Corrupt and honest officers told us that their supervisors knew or should have known about falsified versions of searches and arrests and never questioned them . . . What breeds this tolerance is a deep-rooted perception among many officers of all ranks within the Department that nothing is really wrong with compromising facts to fight crime in the real world. Simply put, despite the devastating consequences of police falsifications, there is a persistent belief among many officers that it is necessary and justifies, even if unlawful. As one dedicated officer put it, police officers often view falsification as, to use his words, 'doing God's work' – doing whatever it takes to get a suspected criminal off the streets.

28

This attitude is so entrenched, especially in high-crime precincts, that

when investigators confronted one recently arrested officer with evidence

of perjury, he asked in disbelief, 'What's wrong with that? They're guilty.'"

n) On February 24, 2017, NYPD officer Elijah Saladeen assaulted a 19 year

old man in the course of responding a call of a possible trespassing. After

the young man was arrested, Saladeen made false statements about the

incident to his supervisors and the district attorneys office. In November of

2019, Saladeen was convicted of assault and three counts of offering a false

instrument for filing.

o) On April 24, 2018, NYPD Detective Joseph Franco was arrested and

charged with 16 counts of perjury relating to written false statements in

sworn affidavits between 2017 and 2018. District Attorney Cyrus Vance

was quoted as saying, "this detective lied to judges, prosecutors, and his

own colleagues in the NYPD about crimes that never happened, and three

New Yorkers wrongfully lost their liberty as a result."

88.     That Plaintiff did not commit any illegal act, either before or at the time

he was falsely imprisoned, assaulted, battered, subjected to excessive force, and

deprived of his constitutional rights as set forth in the Constitution of the United

States, particularly 42 U.S.C. § 1983 and the Constitution of the State of New York.

89.     That by reason of the aforesaid, Plaintiff was injured in mind.

90.     That by reason of the aforesaid, Plaintiff has been damaged in a sum

exceeding the jurisdictional limits of the lower court and seeks punitive damages,

29

costs, attorney's fees, and expert fees as provided by 42 U.S.C. § 1988, and such other relief as the court may deem just and proper.

### AS AND FOR A SEVENTH CAUSE OF ACTION FOR VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983 AS AGAINST TRANSPORTATION AUTHORITY POLICE OFFICER CONNOR FAUGHNAN, SHIELD NO. 2342, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER PATRICK COONEY, SHIELD NO. 2177, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICERS WHO WERE INVOLVED IN THE ARREST AND EXCESSIVE FORCE COMMITTED AGAINST PLAINTIFF NAMED HEREIN AS JOHN/JANE DOES 1-10

91.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked "1" through "90" with the same force and effect as if more fully and at length set forth herein.

92.    That at all times hereinafter mentioned, Defendant-officers were each employed by the City and were acting under the color of their official capacities and their acts were performed under the color of the policies, statutes, ordinances, rules, and regulations of the City.

93.    That at all times hereinafter mentioned, Defendant-officers were acting pursuant to orders and directives from the City.

94.    That during all times hereinafter mentioned, Defendant-officers acted under color and pretense of law, to wit: under color of the statutes, ordinances, regulations, customs and usages of the City and that Defendant-officers were acting under the color and pretense of law and engaged in the illegal conduct set forth in this complaint to the injury of Plaintiff and deprived his of the rights, privileges, and immunities secured to his by the First, Fourth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States, the laws of the United States,

30

the Constitution of the State of New York, the laws of the State of New York, and 42

U.S.C. § 1983 and 42 U.S.C. § 1986.

95.    That the unlawful and illegal conduct of Defendant-officers deprived

Plaintiff of the following rights, privileges, and immunities secured to his by the

Constitution of the United States and of the State of New York:

a)  The right of Plaintiff to be secure in his person and effects against

unreasonable search and seizure under the Fourth and Fourteenth

Amendments to the Constitution of the United States;

b)  The right of Plaintiff not to be deprived of life, liberty, or property without

due process of law, and the right to the equal protection of the laws secured

by the Fourteenth Amendment to the Constitution of the United States;

c)  The right to have freedom of speech;

d)  The right to be free from cruel and unusual punishment;

e)  The right to due process of law.

96.    That by reason of the aforesaid violations committed by Defendant-

officers against Plaintiff – false arrest and false imprisonment, assault, battery, use

of excessive force, and falsifying evidence and NYPD paperwork and malicious

prosecution – Defendant-officers violated Plaintiff's rights and privileges as provided

to his in the Constitution of the United States of America and the Constitution of the

State of New York, and laws thereto. Defendant-officers and the City, through a

policy of deliberate indifference, violated 42 U.S.C. § 1983.

31

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 33 of 36

97.    That as a proximate result of Defendants-officers' actions, Plaintiff was subjected to great indignities and humiliation, and pain and distress of mind and body.

98.    That by reason of the aforesaid, Plaintiff was injured in mind and body, still suffers, and upon information and belief will continue to suffer great physical and mental pain.

99.    That by reason of the aforesaid, Plaintiff has been damaged in a sum exceeding the jurisdiction of the lower courts and seeks compensatory damages, plus punitive damages, costs, attorney's fees, expert fees, as set forth and provided by 42 § U.S.C. 1988, and such other relief as the court may deem just and proper.

**AS AND FOR AN EIGHTH CAUSE OF ACTION FOR VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983 AS AGAINST TRANSPORTATION AUTHORITY POLICE OFFICER CONNOR FAUGHNAN, SHIELD NO. 2342, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER PATRICK COONEY, SHIELD NO. 2177, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICERS WHO WERE INVOLVED IN THE ARREST AND EXCESSIVE FORCE COMMITTED AGAINST PLAINTIFF NAMED HEREIN AS JOHN/JANE DOES 1-10 FOR FAILURE TO INTERVENE**

100.   That Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked "1" through "99" with the same force and effect as if more fully and at length set forth herein.

101.   Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe or have knowledge that another

Case 1:20-cv-00374-LAK-SDA Document 12-4 Filed 02/10/20 Page 34 of 36

member of the NYPD or other law enforcement agency violated a civilian's constitutional right(s).

102.   That Defendant-officers witnessed and/or had knowledge of Defendant-officers' and the City's unlawful and/or unconstitutional imprisonment of and excessive force against Plaintiff. Said actions were without probable cause or other legal justification and were based on facts known to the officers to be false. However, Defendant-officers failed to take any action or make any effort to intervene, halt, or protect Plaintiff from being unlawfully, unconstitutionally, and/or wrongfully imprisoned, assaulted, battered, and subjected to excessive force.

103.   That by reason of the aforesaid, Plaintiff was injured in mind and body.

104.   That by reason of the aforesaid, Plaintiff has been damaged in a sum exceeding the jurisdictional limits of the lower court and seeks punitive damages, costs, attorney's fees, and expert fees as provided by 42 U.S.C. § 1988, and such other relief as the court may deem just and proper.

**AS AND FOR AN NINTH CAUSE OF ACTION FOR VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983 AS AGAINST TRANSPORTATION AUTHORITY POLICE OFFICER CONNOR FAUGHNAN, SHIELD NO. 2342, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICER PATRICK COONEY, SHIELD NO. 2177, METROPOLITAN TRANSPORTATION AUTHORITY POLICE OFFICERS WHO WERE INVOLVED IN THE ARREST AND EXCESSIVE FORCE COMMITTED AGAINST PLAINTIFF NAMED HEREIN AS JOHN/JANE DOES 1-10 FOR ABUSE OF PROCESS**

105.   That Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked "1" through "104" with the same force and effect as if more fully and at length set forth herein.

33

Case 1:20-cv-00374-LAK-SDA   Document 12-4   Filed 02/10/20   Page 35 of 36

106.  By the conduct and actions described above, Defendant-officers employed regularly issued process against Plaintiff compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm Plaintiff without economic or social excuse or justification, and the City and Defendant-officers were seeking a collateral advantage or corresponding detriment to Plaintiff, which was outside the legitimate ends of the process. The acts and conduct of Defendant-officers were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the United States of America and the State of New York.

107.  That by reason of the aforesaid, Plaintiff was injured in mind and body.

108.  That by reason of the aforesaid, Plaintiff has been damaged in a sum exceeding the jurisdictional limits of the lower court and seeks punitive damages, costs, attorney's fees, and expert fees as provided by 42 U.S.C. § 1988, and such other relief as the court may deem just and proper.

109.  That this action falls within one or more of the exceptions to the limitation of joint and several liability included in Article 16 of the CPLR.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount having a present value which exceeds the jurisdictional limit of all lower courts which would otherwise have jurisdiction of this matter, together with interest, costs and disbursements, plus attorney's fees, punitive damages, and such other relief as the court deems just and proper.

34

Dated:  New York, New York
        December 13, 2019

                              SULLIVAN & BRILL, LLP
                              Attorneys for Plaintiff


                              By: James Healy, Esq.


                              115 Broadway, 17th Floor
                              New York, New York 10006
                              Phone: (212) 566-1000
                              Fax: (212) 566-1068
                              Email for Service of Papers:
                              emailservice@sullivanbrill.com

35